GREACEN v. BELL.

(Circuit Court, D. New Jersey. April 5, 1902.)

TRADE-MARKS—TRANSFER OF RIGHT TO USE—FORMATION OF PARTNERSHIP.
    When a trade-mark or trade-name is owned by one who enters into a partnership with another for the manufacture of the article designated, the title to the trade-mark does not pass to the partnership except by express agreement; nor does an agreement made on retirement of the owner from the firm, that the other partner may continue the manufacture of the article with the trade-mark thereon, conditioned that he will furnish the same to the retiring partner at a fixed price, which is about the cost of manufacture, and will not sell to others at less than a stated advance over such price, give the remaining partner the right to use the trade-mark after he has ceased to comply with the agreement on his part.

In Equity. Suit to enjoin infringement of a trade-mark.

Joseph D. Gallagher, for complainant.
Edwin B. Williamson, for defendant.

KIRKPATRICK, District Judge. It appears from the record in this case that in 1885 the Waddell Manufacturing Company was engaged in the manufacture of certain washers made from a combination of rubber, to which it applied the distinguishing name of "The Boss," and that afterwards the said company adopted the name of the "Boss Washer Company." Neither of said companies was incorporated. In 1886 William M. Clarke succeeded to the business of the Boss Washer Company, became the owner of the assets, and continued to manufacture the said washers, and their sale, under the name of the "Boss Washer." It also appears that early in 1887 a controversy arose between the said Clarke and one Rosegarten in respect to the right to use this trade-mark or name, and that a decree was entered in the circuit court of the United States for this district affirming Clarke's right thereto and his ownership in said trade-mark name. It also appears that said Clarke entered into a partnership with Andrew Bell, the defendant, for the purpose of manufacturing and selling "Boss" washers, and after the arrangement had continued for some time he made a memorandum of the agreement in these words:

"Newark, N. J., May 20, 1889. This certifies that Andrew Bell is interested in the manufacture and sale of 'Boss' washers, and other goods made of rubber as equal partners with me, we sharing equally the profits and losses made in said rubber goods. This partnership began November 5, 1886, and is to continue as long as may be mutually agreeable. The mill press and molds used in said business are to be paid for out of the joint funds, and belong equally to Andrew Bell and William M. Clarke. [Signed] William M. Clarke."

The partnership was formed and continued to manufacture and put on the market "Boss" washers until March, 1891, when Clarke, retiring, sold Bell his interest in the personal property of the firm, as per schedule attached to the bill of sale. At the time of the sale it was agreed between the parties that Bell should continue to manufacture

the "Boss" washers, and sell the same to a firm in which Clarke was interested, at $3.50 per thousand, which was about the cost price, and that said Bell should not sell washers so made to any other persons at a less price than $4.50. Thereafter Bell continued the business, and for a time sold the washers as per agreement. Upon his failure so to do he received notice from Clarke that he was no longer to continue their manufacture and sale. Bell continued the business, and one Edward J. Greacen, who holds the assignment of Clarke's rights to the trade-mark "Boss Washer," filed this bill to restrain Bell from using the trade-mark name "The Boss," and using the name of the "Boss Washer Company." It is conceded that prior to the partnership agreement between Clarke and Bell the title of the trade-mark and name "Boss Washer" was in Clarke, as determined by the Rosegarten suit. Bell admits that he did not own it, and it will be observed that neither in the memorandum agreement of May 20, 1889, nor in the bill of sale of the assets of the firm of March 1, 1891, was any mention made of this trade-mark. That its transfer was not in the contemplation of the parties appears from the testimony of Bell, wherein he says: "At the time of the transfer of the business nothing was said about the trade-mark;" and from the agreement of May, 1889, which speaks only of the profits of the business. So that if the title to the trade-mark passed to the partnership it must have been solely by the operation of the law. When a trade-mark or trade-name is owned by one who enters ino a partnership with another for the manufacture of the article designated, the title of the trade-mark does not pass to the partnership except by express agreement. This is the doctrine laid down in Browne, Trade-Marks, § 364, wherein he says:

"Where one allows the use of his trade-mark on goods manufactured by the firm, that fact alone does not prevent the use of it, and it may remain the sole property of the individual owner, and the fact that the property was used by the partnership for the partnership's profits does not, of itself, make it the partnership's property. What the partnership takes over as its own depends entirely on the terms of the partnership agreement."

In the case of Kidd v. Johnson, 100 U. S. 617, 25 L. Ed. 769, one Pike was the owner of a trade-mark, and went into partnership with two of his employés. He allowed the use of his trade-mark upon packages made by the firm, but, inasmuch as he did not in terms make any assignment to the firm of his trade-mark, Justice Field, speaking for the court, said:

"The trade-mark no more became the partnership property from that fact [the user] than did the realty itself, which he also owned, upon which the business was conducted. Taking his clerks into partnership with him changed in no respect, by its terms, their relation to his individual property."

Applying this principle to the case at bar, I am of opinion that, in the absence of express agreement, no title to the trade-mark passed from Clarke to the partnership by the agreement of May 20, 1889, nor by the bill of sale of his interest in its assets. It is urged that, by the purchase of the molds with the trade-mark name "Boss Washer" stamped therein, Bell acquired a title thereto; but the object of the purchase of said molds, adaptable only to the manufacture of wash-

ers, with the trade-mark imprinted thereon, is apparent when we consider that, by the agreement between Clarke and Bell, Bell was to manufacture "Boss" washers for the Newark Brass Works, in which Clarke was interested, and for the general trade, to which he was to sell them at specific prices. The price to the brass works for said washers was to be cost or nearly so, and from $1 to $1.50 per thousand less than they should be sold to others, and the concession and benefit appears from the evidence to have been made as a consideration for the right to use the trade-mark. If Bell considered himself the owner of the trade-mark, I cannot conceive why he should have tied himself up by such a disadvantageous contract in regard to the disposition of the product of the business.

It is admitted by defendant that he has sold "Boss" washers contrary to the terms of the agreement, and that he was told by Clarke's counsel to stop using the trade-mark, and that he promised, but has failed, so to do. I conclude from what has been said that the defendant, Bell, acquired no title to the trade-mark name "Boss Washer," either by the formation or the dissolution of the partnership with Clarke; that his right to the use of the said trade-mark ceased when he neglected to comply with the terms of his agreement with Clarke in respect to price; and that thereafter he was an infringer.

The right of the complainant to bring this suit as an assignee of Clarke has not been raised, and he is entitled to a decree as prayed for.