BURLEIGH et al. v. FOREMAN.

In re SWIFT et al.

(Circuit Court of Appeals, First Circuit. February 26, 1904.)

No. 472.

1. BANKRUPTCY—PERSONAL ASSETS—APPEAL—FINDINGS.

> Where there were no express findings of fact either by the referee or the District Court, on an issue as to whether certain property had in fact been transferred by a partner to the firm, which had been adjudged a bankrupt, the Circuit Court of Appeals, on appeal from a decision that such property was a part of the bankrupt's assets, was not aided in its consideration of the case by the weight which ordinarily attaches to the findings of courts of first instance.

---

¶ 1. Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.

2. SAME—EVIDENCE.

In proceedings for the administration of the assets of a bankrupt firm of brokers, evidence reviewed, and *held* insufficient to authorize a finding that one of the members of such firm transferred to it certain seats in different exchanges of which he was a member.

3. SAME.

Where certain assets, belonging to one of the members of a firm of brokers, which subsequently became bankrupt, were not mentioned in the partnership articles, and such partner's testimony that such of the assets as were owned prior to January 1, 1899, were his individual property, and were not transferred to the partnership, was undisputed, a finding that such assets belonged to the firm was error.

Appeal from the District Court of the United States for the District of Massachusetts.

See 125 Fed. 217.

Addison C. Burnham and Albert S. Hutchinson, for appellant.
Bancroft G. Davis, for appellee.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

ALDRICH, District Judge. This is an appeal in bankruptcy, and as such raises the whole case. The question here is whether a seat in the Boston Stock Exchange, a seat in the New York Stock Exchange, a seat in the Chicago Board of Trade, and certain Wheelman Company stock and notes, were the property of E. C. Hodges & Co., which company is in bankruptcy. There were other questions below, but we have only to deal with such questions as are raised by the assignment of errors, and they all relate to the single question stated.

The discussions upon the briefs and oral arguments have taken a very broad range, but, after all, the question in the case is a very simple one, and is largely, if not altogether, a question of fact. Williams on Bankruptcy (7th Ed.) p. 158. The argument of the appellee is largely constructed upon certain supposed presumptions and inferences as to relative rights and as to community of interests which result where one partner only contributes property to the capital of the partnership; but such argument is without much force in this case, because the question here is whether the stock exchange seats in controversy were actually contributed to the partnership, and, in a situation like this, that becomes a question of fact. The issue here is not as to the rights of creditors in respect to property, which we are at liberty to assume was contributed by a sole partner to the capital of the partnership. The question whether the property was ever in fact contributed is raised in limine, and therefore the question whether the individual title ever passed to the partnership is first to be determined.

The question of contribution once established, various presumptions as to ownership and rights result, and substantial questions of legal and equitable creditor rights may then be largely influenced by considerations of estoppel and other considerations having reference to the ostensible ownership; and oftentimes, when individual property is once in, it may be held by creditors, although the contributing or creditor partner, as between himself and the other or debtor partners, would be entitled to restoration of title, or to an accounting with re-

spect to the property. Oftentimes confusion arises by applying to what is here the original question, that of contribution, inferences, and presumptions resulting from confused conditions under reputed and ostensible ownership in the course of the partnership business; but there is nothing in the situation here which entitles the partnership creditors to hold the property in question upon the ground of reputed or ostensible ownership as against the individual ownership, if such individual ownership has never been parted with in fact. This case, so far as we are to consider it, turns upon the question whether the first point is established; that is to say, Is the fact established that Hodges, who, it is conceded, was the individual owner of the property in question, actually contributed it to the partnership enterprise?

The solution of that essential and preliminary question is not aided by any presumption or inference as to community of interests based upon the fact of contribution. In a situation like the one before us, the proposition that the title was transferred must be established like any other proposition of fact.

Upon this fundamental question of fact there is no distinct finding by either the referee in bankruptcy or the District Court. The conclusion of the referee, based upon findings and opinion, was that the property in question formed part of the assets of the joint estate. Just how far this conclusion was influenced by presumptions resulting from ostensible and reputed ownership we cannot know. Neither is there anything in the record which enables us to determine just how far the referee was influenced by statements of customers who dealt with the firm that they had been told that the property in question was joint assets, but there is, however, enough in the certificate of the referee to show that such phase was taken into consideration by him. Neither is it apparent from the record that the District Court made a distinct finding upon the essential and preliminary question of fact. On the contrary, it would seem from the opinion, which is before us, that the learned judge of that court, who did not have the witnesses before him, and who acted upon the record now before us, with expressions of doubt reached his conclusions upon general reasoning in respect to law and fact.

Indeed, the learned District Judge says that "the intentions of both parties, Hodges and Swift, were vague. The original partnership between Hodges and Lowry was of an uncertain character." Again, "When the new partnership was formed, consisting of Hodges, Swift, and Lowry, the intention was but a little more definite."

We are aware that, in the absence of circumstances showing the contrary, the presumption is that all facts necessary to a decree were found by the court below; but in this case the circumstances show that the precise question whether Hodges put the seats, in the various stock exchanges, into the firm, intending thereby to contribute their title and their value to the capital of the partnership, was not determined as a distinct question of fact. There being no express findings stated in such a way as to make it clear that they were distinct findings upon questions of fact, we are not aided in our consideration of this case by the weight which ordinarily attaches to findings of courts of first instance.

The stock exchange seats were the individual property of Hodges at the time the partnership was formed. The precise question, as we have said, is whether he parted with his ownership of the seats, and contributed their value to the partnership assets. There is nothing in the articles of copartnership or in the evidence as to the conduct of the parties by way of practical construction of the particular paragraph relating to the stock exchange seats, or in the circumstances of this case, viewing it in all its aspects, of sufficient potency to establish the proposition and justify a finding that Hodges parted with his title by contributing the seats in the various stock exchanges to the partnership capital. The partnership was for the limited period of six months. There is a paragraph in the agreement which provides that the New York and Boston seats standing in the name of Hodges shall draw interest up to the amount of $50,000, which shall be charged to the general expense account. The Chicago seat was not referred to at all. The seats in the various stock exchanges were of a substantial value, considerably more than $50,000. It is contended that Swift, as an equivalent, contributed $50,000 to the partnership capital, but this turns out to be a loan negotiated by him upon the responsibility of the partnership. The seats were never credited to Hodges, nor were they entered upon the books as partnership assets. The fact that Hodges was to be paid interest on the arbitrary sum of $50,000 is more consistent with the idea that it was in the nature of compensation for the use than with the idea of an outright contribution of his individual property to the partnership capital. There is no occasion, and we have no right, to enter the field of supposed presumption and inference resulting from a community of interests, based upon the fact of contribution to the partnership property.

It is highly improbable that Hodges, without provision for pecuniary return for their value, intended to pass title to these seats to a partnership with these young men without capital, formed with reference to the profits of the business for a term of six months. We look upon the provision in the copartnership articles as to interest on $50,000 as an expression adopted by the parties for fixing the value of the use of the seats in the stock exchanges to the partnership business.

We do not get much aid in the solution of a question like the one with which we are now confronted from reported decisions. Each case must necessarily stand upon its own merits. In Grecean v. Bell (C. C.) 115 Fed. 553, where it was determined that the individual title to a trade-mark owned by one of the partners, used in the partnership business, did not pass without an express agreement, the question is reasoned as though it were to be governed by a rule or by a doctrine, and a quotation from Brown on Trade-Marks, where it is said that what the partnership takes over as its own depends entirely upon the terms of the partnership agreement, is referred to as a doctrine stated by the text-book writer. In our view, the determination of such a question is not controlled by a rule of law, but is in each case to be determined as a question of fact, and that fact must be ascertained upon the evidence which describes and illustrates the situation of that particular case. Of course, how a question of fact will be determined depends largely upon the character of the question, and rules of law have to do with

the kind and measure of proofs, and, under all conditions, the proofs must be sufficiently definite and of sufficient substance to fairly and reasonably establish the proposition asserted.

We reach the conclusion that there is nothing in the record to justify a finding of fact that the stock exchange and board of trade seats which were the individual property of Hodges were contributed to the joint assets of the partnership.

The Wheelman assets were not mentioned in the articles of agreement, so far as we have discovered were only referred to in the evidence of Hodges, and his undisputed statements must be received as establishing the fact that such as were prior to January 1, 1899, were his individual property, and were not transferred to the partnership. These assets, therefore, so far as they existed prior to January 1, 1899, stand the same as the Boston and New York Stock Exchange seats and the Chicago Board of Trade seat, and the general observations with reference to that phase of the case apply with equal force to such as existed prior to the time to which we have referred.

The Wheelman transactions, subsequent to the formation of the partnership, stand differently; and while the proofs as to the status of such assets existing subsequent to January 1, 1899, are very meager and unsatisfactory, we think it is established as a fact that such as were acquired subsequent to January 1, 1899, were based upon partnership transactions and related to partnership business, and should therefore be treated as partnership assets.

The decree of the District Court is reversed so far as it relates to the seat in the Boston Stock Exchange, the seat in the New York Stock Exchange, and the seat in the Chicago Board of Trade, and the decree is modified so far as it relates to the Wheelman assets so as to exclude from partnership assets such as existed prior to January 1, 1899; the case is remanded to the District Court for further proceedings not inconsistent with this opinion; and the appellants recover costs in this court.