## ATWATER v. GUERNSEY ET AL., TRUSTEES IN BANKRUPTCY OF ATWATER, ET AL.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 511. Submitted December 14, 1920.—Decided January 3, 1921.

Petitioner advanced his son the money to buy a seat in the New York Stock Exchange and to pay the initiation fee, executing releases to the son which were filed with the Exchange in compliance with its rules, and the son paid interest on the amount advanced. The evidence showed that the advance was intended as a gift and that the interest was paid as a moral obligation merely. *Held*, irrespective of the technical operation of the releases, that the petitioner had no valid claim to reimbursement against the trustee of the son's firm in bankruptcy.

266 Fed. Rep. 278, affirmed.

THE case is stated in the opinion.

*Mr. Abram J. Rose* for petitioner. *Mr. Frank B. Lown* was also on the brief.

*Mr. R. D. Whiting* for respondents. *Mr. C. W. H. Arnold* was also on the brief.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is an appeal from an order expunging a claim of the petitioner, Edward S. Atwater, against his son, Eliot Atwater, a member of the firm of Atwater, Foote and Sherill, adjudicated bankrupts. The claim is for $75,000 furnished by the father to the son, to enable him to buy a seat in the New York Stock Exchange and to pay his initiation fee. The seat was bought and the use of it was

contributed to the firm by Eliot Atwater, the seat remaining his individual property, as the Master and both Courts have found, and as we see no reason to doubt. In connection with the purchase, as required by the rules of the Stock Exchange, Edward S. Atwater executed a release of all claims against Eliot Atwater, "and more particularly by reason of an advance of the sum of ($73,-000) Seventy-Three Thousand Dollars, made to said Eliot Atwater, to enable him, the said Eliot Atwater, to purchase a membership in the New York Stock Exchange." There was a second release with a similar special clause covering $2,010, to enable the son "to pay his initiation fee to the New York Stock Exchange." The Master and both Courts considered the release a bar to the appellant's claim.

It hardly was necessary to reach that point, as it seems to us obvious that whatever moral obligation was considered to remain, both father and son understood at the time of the transaction that no legal obligation arose from the advance, and the release expressed the fact. There is no doubt that the release was intended to be an operative instrument, at least so far as creditors who were members of the Stock Exchange were concerned. That being so it would be going very far to allow a cotemporaneous parol understanding to be shown that it should not do the very thing that on its face it specifically purported to effect. But we find no such understanding. It is admitted that no document ever was given to show it. The father testified that his son never agreed to repay the money and that nothing was said about repayment; the son testified that he understood that there was no claim against himself legally. It is true, no doubt, and natural that he should have considered that there was a moral obligation, and in pursuance of it interest was paid to the father until the bankruptcy. It is true, also, that father and son in their testimony use some phrases that favored the present claim. But we are satisfied that,

at the time, the release was given in good faith, and meant what it said without equivocation or reserves. It is unnecessary to consider whether the Circuit Court of Appeals were successful in distinguishing *Sterling* v. *Chapin*, 185 N. Y. 395, from the present case, on the assumption that the parties attempted to qualify the release. More need not be said to show that the decree should be affirmed.

*Decree affirmed.*