**In re AMY et al.**

Circuit Court of Appeals, Second Circuit.
July 26, 1927.

No. 391.

1. **Partnership ☞67—Seat on Stock Exchange, as treated by son and father, who were partners, held individual property of son.**

Where seat on Stock Exchange was purchased by son with money given by father, with whom he formed partnership, and in liquidation of firm on father's death, and in settlement of father's estate, latter was treated as having no interest in seat, which had not been carried on books of firm, it was individual property of son, on his formation of partnership with his brother.

2. **Partnership ☞67—Whether partner's property, used in firm business, is firm or individual asset, depends on partner's intention.**

Whether property owned by partner, and used in firm business, shall be deemed firm asset, or asset of individual, depends on intention of partners.

3. **Partnership ☞67—Agreement in articles of partnership for interest on stipulated valuation of Stock Exchange seat held not conclusive that it was contributed as partnership assets.**

In contest between creditors of individual partner and partnership creditors, where both partners and firm had been adjudged bankrupt,

even agreement for interest on stipulated valuation for Stock Exchange seat in articles of partnership was not conclusive evidence that it was contributed as partnership assets.

4. **Bankruptcy** ⟐354—**Failure of trustee in bankruptcy to separate proceeds of partner's Stock Exchange seat from firm's assets held not to affect rights of partner's creditors (Bankruptcy Act, §§ 5d, 5f [11 USCA § 23]).**

Where both firm and partners were adjudicated bankrupt, fact that trustee in bankruptcy, contrary to Bankruptcy Act, § 5d (11 USCA § 23 [Comp. St. § 9589]), deposited proceeds of Stock Exchange seat, individual property of partner, and all other moneys collected by him, in bank account kept in name of firm, and filed interim reports, in which no distinction was made between firm and individual assets, did not affect rights of individual partner under section 5f.

Appeal from the District Court of the United States for the Southern District of New York.

In the matter of Louis H. Amy and Ernest J. H. Amy, individually and as copartners doing business as H. Amy & Co., bankrupts. From an order decreeing proceeds of a Stock Exchange seat to be partnership property, the Asylum of St. Vincent de Paul and the Bankers' Trust Company, as substituted trustee, appeal. Reversed.

Gilman & Unger, of New York City, for appellant Asylum of St. Vincent de Paul.

Larkin, Rathbone & Perry, of New York City (William F. Unger and Thomas F. Dougherty, both of New York City, of counsel), for appellant Bankers' Trust Co.

Beekman, Bogue, Clark & Griscom, of New York City (Henry B. Hodge and W. Campbell Armstrong, both of New York City, of counsel), for appellee Marcuard & Co.

Humes, Buck & Smith, of New York City (Ben Le Roy Stowell and Prescott R. Andrews, both of New York City, of counsel), for appellee Cramer.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge. This is a contest between individual creditors of Louis H. Amy and partnership creditors of the firm of H. Amy & Co., of which he was a partner. Both the firm and the partners have been adjudicated bankrupts. The dispute originated in a petition by the appellants, who claim as individual creditors of Louis H. Amy, to have the proceeds of the sale of a seat in the New York Stock Exchange, amounting to $88,918.82, allocated as an asset of his individual estate. The District Court, confirming an order of the referee in bankruptcy, held the membership, and its proceeds, to be partnership property.

[1] Louis H. Amy purchased a membership in the New York Stock Exchange in 1888 with money given him by his father, Henry Amy. A partnership was formed between them, which continued from January 1, 1889, until the father's death in 1901. Thereupon this partnership was liquidated, and in such liquidation and in the settlement of the father's estate, the latter was treated as having no interest in the Stock Exchange seat. It had not been carried on the books of that firm. It is clear, therefore, that the seat was the individual property of Louis H. Amy when he formed, with his brother, Ernest J. H. Amy, the partnership which is now in bankruptcy. This was formed by formal articles of agreement dated December 31, 1901. After stating the purpose of the copartnership to be the carrying on of the general business of banking and brokerage under the firm name of H. Amy & Co., beginning January 1, 1902, the agreement sets forth, among others, the following provisions:

"Third. The said Louis H. Amy shall bring as his capital into partnership the sum of thirty-seven thousand five hundred dollars ($37,500), and the said Ernest J. H. Amy the sum of twenty-two thousand five hundred dollars ($22,500), and the said parties hereto agree to bestow all their skill, time, and attention upon the said partnership business."

"Fifth. Interest on the individual accounts of the two parties shall be charged and credited at the rate of 4 per cent. per annum; and the said Louis H. Amy shall be entitled to and interested in 62½ parts and the said Ernest J. H. Amy shall be entitled to and interested in 37½ parts of so much of the net gains and profits of said business as shall remain after the payment of the interest due on the accounts of the respective parties; and the said parties shall bear and defray all the losses and damages, which may be sustained by said copartnership in said business, in the same proportions as they are respectively entitled to in the net profits. Previous to any division of profits or losses the individual account of the said Louis H. Amy, party of the first part, shall be credited with an amount equal to interest at the rate of six per cent. per annum on sixty thousand dollars ($60,000) to wit: Three thousand six hundred dollars ($3,600) as compensation for and in consideration of his contributing to the firm the entire and exclusive benefit of his membership in the New York Stock Exchange free from all taxes,

fees and charges whatsoever to which the said membership may be subject.

"Whenever the capital of this business shall be increased, the present proportion of the capital put in by the parties, namely, thirty-seven thousand five hundred dollars ($37,500) and twenty-two thousand five hundred dollars ($22,500) shall remain the same, so that both the partners only can increase the capital and then only in the above-named ratio; and the respective shares of each in the profits and losses of the business shall remain the same as above stipulated."

"Eleventh. In case the said Louis H. Amy shall die during the continuance of the partnership his legal representatives shall have the right, equally with the surviving partner, to liquidate the business; and if the party of the second part shall be desirous of continuing the business the party of the second part shall pay for the good will of the business such a sum as shall be determined by three disinterested persons, each party selecting one and the two selecting a third. In case Ernest J. H. Amy should die during the continuance of the partnership then the said Louis H. Amy shall be entitled to continue the business as before without the interference of the legal representatives of the deceased party and shall be entitled to the firm name and all the books, papers and good will of the business and shall pay one-third part of the moneys standing to the credit of the said Ernest J. H. Amy within three months after his death and shall pay the remaining two-thirds of such moneys within six months after his death, interest thereon to be allowed; and he shall duly pay his share of the net profits as soon as they shall have been ascertained."

[2] Whether property owned by a partner and used in the firm business shall be deemed an asset of the firm or of the individual depends upon the intention of the partners. See In re Swift (D. C. Mass.) 118 F. 348; In re Atwater, 266 F. 278 (C. C. A. 2), affirmed 254 U. S. 423, 41 S. Ct. 150, 65 L. Ed. 339. The above-quoted provisions of the partnership articles appear to express an intention not to contribute Louis' membership as capital, but to grant the firm the use of his seat for the stipulated compensation.

The third article deals with capital contributions and specifies that Louis shall bring as his capital $37,500 and Ernest $22,500. If the seat, apparently valued at $60,000 in the fifth article, is also to be deemed a capital contribution by Louis, this would entirely upset the relative contributions of the two

and be inconsistent not only with the third article, but also with the last paragraph of the fifth article, which deals with increasing the capital. Moreover, profits and losses are to be divided in the same proportion, namely, five-eighths to Louis and three-eighths to Ernest, and if the seat were included as a capital contribution, this proportional division would not be followed. It is, of course, true that the division of profits and losses need not accord with capital contributions, but these articles appear to be drafted on the theory that they shall.

[3] The fifth article deals chiefly with the division of profits and losses, and the mention of the seat appears to come in merely as a direction of how the profit or loss shall be calculated. Louis is to be credited "with an amount equal to interest at the rate of 6 per cent. per annum on $60,000 as compensation for * * * his contributing to the firm the entire and exclusive benefit of his membership." This item of $3,600 is an expense of the firm, to be deducted before profit or loss is ascertained. It is paid by the firm as compensation for its use of the seat. If the word "use" had been employed, no question could be raised. We attribute no different meaning, however, to "benefit" in the phrase "entire and exclusive benefit." Why should the firm pay "compensation," if a seat were already contributed as firm assets? It might have allowed interest on its value as a capital contribution, before figuring profits; but it is significant that the "compensation" is not spoken of as interest, but as "an amount equal to interest." This would be an unnatural way to refer to interest on a capital contribution. Even an agreement for "interest" on a stipulated valuation for the seat would not be conclusive evidence that it was contributed as partnership assets. Burleigh v. Foreman, 130 F. 13 (C. C. A. 1). Again, if the seat were firm assets, we should expect the firm to pay the taxes, fees and charges assessed upon it. See In re Hurlbutt, Hatch & Co., 135 F. 504, 506. Whereas, if it remains the property of Louis, of which the firm has only the use, the provision that he shall pay such charges is natural enough.

It is argued by the appellees that the phrase "good will" in the eleventh article includes the seat and hence indicates that it was a firm asset. We cannot accede to so strained a construction. We mention the argument merely to indicate that it has not been overlooked.

The conduct of the partners—at least,

until the making of their assignment for the benefit of creditors, which will be discussed hereafter—was entirely consistent with the construction we have placed upon the partnership agreement. Ernest paid into the firm his capital contribution of $22,500. Half of this sum he obtained from the younger brother, Henry, Jr., under an agreement contemporaneous with the partnership articles, and an account was opened in his name in which he was credited or debited with three-sixteenths of the profits or losses. Ernest's share in profits and losses was correspondingly reduced from three-eighths to three-sixteenths. Louis, as his contribution of $37,500, left in his interest in the former firm of which his father had been a member. The new firm continued in the same offices and with the same equipment as had been used by the former firm, and new books of account were not opened. No entry was made of the stock exchange seat as a capital contribution. As has been shown, Louis' seat was not a partnership asset of the former firm, although used in its business. When the new firm was formed the seat was apparently treated in the same manner; that is, it was not considered a capital contribution, but Louis granted the exclusive use of it to the firm for compensation. Such compensation was credited each year to his account in the firm books and his account was debited with the taxes, fees, and charges which the firm paid on account of his membership.

The only act of the partners which tends to show any departure from the understanding regarding the seat expressed in their formal articles of partnership occurred just before the bankruptcy. On March 5, 1919, the partners executed an assignment for the benefit of creditors to their attorney, Edward J. McGuire, who later became trustee in bankruptcy of the assets of the firm and of the individual partners. Ten days later they signed and swore to an inventory of the property of H. Amy & Co. and included as an item therein: "One seat N. Y. Stock Exchange, in name of Louis H. Amy, $70,000." This inventory in the matter of their general assignment was filed in the New York county clerk's office, March 18, 1919, one day before the filing of the petition in bankruptcy. We do not find it necessary to decide whether this inventory sworn to by Louis H. Amy, would be competent evidence to affect the relative rights of individual and firm creditors. At best it would be but an admission, and it was made under circumstances which render it insufficient to outweigh the contrary evidence found in the original contract and the long course of conduct thereunder.

[4] The trustee in bankruptcy received the proceeds of the sale of the seat in July, 1919. Section 5d of the Bankruptcy Act (11 USCA § 23; Comp. St. § 9589) makes it his duty to keep separate accounts of the partnership property and of the property belonging to the individual partners. He failed to do this, and deposited the proceeds of the seat and all other moneys collected by him in a bank account kept in the name of the firm. He also filed numerous interim reports, in which no distinction was made between firm and individual assets. Such conduct by the trustee, however, cannot affect the rights of creditors under section 5f. The issue was properly raised before distribution, and on the evidence we are compelled to hold the membership to have been an individual asset of Louis H. Amy.

The decree is reversed, with costs to the appellants.