In re FISHER (two cases).

(District Court, D. Massachusetts. November 6, 1899.)

No. 203.

**1. BANKRUPTCY—ASSETS—LIQUOR LICENSE.**

Where it appeared that licenses for the sale of liquor, in the city where the bankrupt carried on business under such a license, were transferable, as stated below in the opinion, with the consent of the board of police commissioners, who had authority to grant such licenses in a limited number, and were usually transferred by an indorsement on the license surrendering it for cancellation, and the issuance of a new license

in its place to the assignee, if approved by the board; that the board had made a rule, since the adjudication, that, where a licensee became bankrupt, they would give prior consideration to applicants named by the trustee in bankruptcy; and that licenses had a market value of $4,000 or $5,000 for the purposes of such a transfer, conditional upon the purchaser being accepted by the board,—*held*, that the bankrupt would be ordered to make such indorsement upon the license as would enable the trustee to realize its value for the benefit of the creditors.

**2. SAME—PARTIES—JURISDICTION.**

Where a liquor license was issued jointly to a woman and her husband, but the latter had no personal interest in it, his name being inserted merely · to prevent a lapse in case of the wife's death, and they were both adjudged bankrupt on their separate voluntary petitions, and the license was sold and the proceeds paid into the bankruptcy court, pursuant to an agreement between the bankrupts, their trustees, and a creditor to whom the license had been pledged as collateral security, and the husband's trustee and the pledgee petitioned to be made parties to a proceeding already pending in that court on the application of the wife's trustee for orders to enable him to convert the license into cash, *held*, that such petition of intervention should be granted, and that thereupon the court had jurisdiction to order the distribution of the fund in court, and would direct the payment to the pledgee of the amount due to him, and of the balance to the wife's trustee.

In Bankruptcy. In the matter of the voluntary petitions of Ida C. Fisher and Rollin B. Fisher. On review of decision of referee in bankruptcy.

Addison C. Burnham, for trustee in bankruptcy.

Brandeis, Dunbar & Nutter and Edward F. McClennan, for bankrupt.

George A. Blaney, for George F. Chapin.

Joseph W. Lund, trustee in bankruptcy of Rollin B. Fisher.

LOWELL, District Judge. On May 1, 1898, a liquor license for the term of one year was issued by the board of police of the city of Boston to Ida C. Fisher and Rollin B. Fisher. The license fee was paid out of money advanced as a loan to Ida C. Fisher. The license was indorsed as follows:

"This license was paid for by money advanced for same by George F. Chapin, and for which we pledge it for collateral security, and ask commissioners to acknowledge same."

Rollin B. Fisher's name was added in said license, in accordance with a custom prevailing in Boston, to prevent a lapse in case of the death of Ida C. Fisher, but he testified before the referee that he had no personal interest in the license. The referee found that:

"Liquor licenses are issued by the city of Boston to a limited number only, and are much in demand. They are transferable only with the assent of the board of police commissioners, and then only in the following manner: There is a usage and practice by which a license may be surrendered, and a new license issued to another in the place thereof, as follows: The man that desires to go into business files an application describing the locality, and who the persons are that propose to engage in business; and if they are satisfactory, and there is no legal objection to the place where they propose to engage in business, and there will be a vacancy caused in the list of licenses ordinarily granted, the board agrees to one license being surrendered for the purpose of being canceled, and in place of it another is issued to the new firm or persons applying for it. The surrender is ordinarily by a simple form of indorsement,

addressed to the board of police, stating, 'The undersigned hereby surrenders his license for the purpose of having it canceled,' and signed by one or more of the licensees, binding the firm to that agreement. There is a recognized value of from $4,000 to $5,000 which attaches to a license for the purpose of such transfer, and such sum can be obtained in the liquor trade for the surrender of a license in favor of another, conditional upon the purchaser proving satisfactory to the board of police commissioners as a licensee." "There was evidence submitted that the commissioners refused to transfer a license, or allow a sale to be made from one person to another, until the one making the transfer had been free of debt,—in other words, 'go out of business honorably' and 'without fraud of his creditors, or anything of that sort.' No evidence was submitted as to what the action of the commissioners would be in case of a surrender under an order of court by a bankrupt of his license, for the benefit of the creditors of the bankrupt, and there was no evidence that such a case had come before the board prior to the filing of the petition in this case."

Since May 1, 1899, the board of police commissioners have taken the following action concerning transfers of liquor licenses and licenses of bankrupts:

"The board of police, in judging of the fitness or unfitness of applicants for a liquor license, will first consider applicants named by a retiring solvent licensee who has provided for his creditors, and who has conducted the business in the spirit as well as the letter of the law. In case such licensee, or one of several licensees, is adjudged a voluntary or involuntary bankrupt, the board, at the termination of such license, will give prior consideration to applicants (if any) named by the trustee in bankruptcy."

Ida C. Fisher and Rollin B. Fisher were both adjudged bankrupt upon their several voluntary petitions, filed October 19, 1898, and September 14, 1898, respectively.

The petition originally filed by Cushman, the bankrupt's trustee in Re Ida C. Fisher, sought (1) to compel the bankrupt so to indorse the liquor license that the trustee might realize its value for the benefit of her creditors; and (2) to compel Rollin B. Fisher, in whose name, jointly with that of the bankrupt, the license was issued, to make a similar indorsement, on the ground that the whole beneficial interest in the license was in the bankrupt. Both the bankrupt and Rollin B. Fisher demurred (the papers filed were styled "demurrers") to the petition for want of jurisdiction, and for other reasons. The referee overruled the demurrers, and made a decree requiring both the bankrupt and Rollin B. Fisher to make the indorsements prayed for in the petition. After a hearing before me on review, I expressed informally the opinion that the referee's decree must be affirmed as to the bankrupt, for the following reasons: Common sense, justice, and the decided cases require that the considerable sum of money which, as it appears, can be obtained as the result of certain acts of the bankrupt in dealing with the license, shall be applied for the benefit of her creditors. It is impossible to improve the statement of Judge Choate in Re Ketchum (D. C.) 1 Fed. 840, concerning a right or privilege in many respects similar to this:

"The seat, however, has an actual pecuniary value, which the rules of the society, as interpreted and applied in practice, permit the holder to realize by a sale and transfer. There is no practical difficulty in effecting a transfer of this right or interest for a pecuniary consideration, subject to the condition that the debts of the present holder to members are first paid; and the right or privilege is, to all intents and purposes, a business right or privilege, useful for business purposes only." "This seat in the board was actually used as part

of the business capital of these bankrupts, as stockbrokers. To suffer the bankrupts still to hold it, virtually withdraws several thousand dollars in value of their business assets from the creditors."

It is not improbable that the license in the case before me came into the bankrupt's hands by virtue of some transfer made to her or to her husband similar to that which she is asked to make in this case, and in return for the payment of money made by her or by her husband to the transferror. It is practically an essential and important part of her business assets, and she has used it as security for the payment of a considerable sum of money which she has borrowed. To permit her to deprive her creditors of the value of this asset would permit the defeat of the primary intent of the bankrupt act. See, also, In re Gallaher, Fed. Cas. No. 5,197; s. c. on appeal, 16 Blatchf. 410, Fed. Cas. No. 5,192. It will be noticed that I have not to decide in this case if Ida C. Fisher's legal right to the license in question, under the terms of the bankrupt act, passes to her trustee in bankruptcy, but only if, under the circumstances, she should be compelled to make the indorsement upon the license demanded by the trustee. The board of license commissioners may refuse to recognize the indorsement, if they see fit.

As to Rollin B. Fisher, I intimated that the petition must be dismissed, following the decision in Re Brodbine (D. C.) 93 Fed. 643. Thereafter, Rollin B. Fisher having applied for a renewal of the license for his personal benefit, Joseph W. Lund, his trustee in bankruptcy, filed a petition in Re Rollin B. Fisher to compel Rollin B. Fisher to execute to Lund an indorsement similar to that demanded from Ida C. Fisher, and Rollin B. Fisher was ordered to make the indorsement. Thereupon an agreement was very properly entered into by the two bankrupts, their several trustees, and George F. Chapin, to the end that the value of the license might be preserved until the final determination of the whole matter by a higher court. The material parts of the agreement are substantially as follows: That the parties will join in making such indorsements on the license and such applications as will enable it to be surrendered and canceled, and a new license issued to any purchaser who may be found therefor, on terms satisfactory to this court; that the license so indorsed shall be placed in the custody of the two trustees, to find a satisfactory purchaser therefor, and to surrender and cancel the same in order to have a new license issue to the purchaser; that the sum realized from the sale and disposition of the license shall be paid into the court of bankruptcy, or be deposited in accordance with the court's order, "to be held in the place of said license, and with all the rights of the parties hereto in said sum which they now have in said license, to await the final determination of the rights of said parties in said license by the highest court of competent jurisdiction to which any of said parties may resort, and subject to all orders and decrees of the court in which, for the time being, proceedings for the determination of said rights are pending, to which said license would be subject." In accordance with this agreement, and with the approval of this court, the license was sold, and the price received has been deposited in this

court. Thereafter a stipulation was filed by the two bankrupts, waiving their objections to Cushman's petition "on the ground that said petition is by a summary. and not by plenary, process," but expressly insisting "upon their objections to the jurisdiction of this court to grant the relief prayed for in said petition." Still later, Lund and Chapin filed petitions asking that they might be admitted as parties to the proceedings begun by Cushman's original petition, for the purpose of establishing their rights in the license, and in the fund realized from the disposition thereof. In these petitions Lund and Chapin each expressly submitted himself to the jurisdiction of this court, for the purpose of having his rights determined in these proceedings. The petitioner Cushman assented to the allowance of these petitions. Counsel for Ida C. Fisher thereupon filed written motions to dismiss the petitions of Lund and Chapin, just mentioned. In this condition of the pleadings and facts, I have to make final disposition of the case, so far as this court is concerned, shaping the record so that all parties may be in the best position to present to the court of appeal the interesting questions they have severally raised.

The petitions of Lund and Chapin to be made parties defendant to the petition of Cushman must be granted. These persons have, or may have, an interest in the disposal of the money now in court as the result of the indorsements ordered by this court, and made by the bankrupts. It is not necessary now to determine if section 23 of the bankrupt act gives this court jurisdiction to bring Lund and Chapin into these proceedings against their will. Lund and Chapin have expressly consented to this jurisdiction, and the section referred to certainly permits any person against whom the trustee wishes to bring suit to submit himself to the jurisdiction of this court. Since Chapin and Lund have come into the case, this court has before it all the persons who have any claim to an equitable interest in the license or in the deposit. Cushman, the trustee of Ida C. Fisher, to whom she has been ordered by this court to indorse the license, and in whom is vested her entire beneficial interest in all her property not exempt by law, is the petitioner. In Lund, trustee for Rollin B. Fisher, is vested the title to all the property of Rollin B. Fisher not exempt by law; and to Lund, Rollin B. Fisher has been directed to indorse all his right in this license. Chapin, whose interest in the license is that of a mortgagee or pledgee, is also before the court. Counsel for Rollin B. Fisher contends that this court is without jurisdiction over him. This need not now be decided, as all his beneficial right in the deposit is now vested in Lund, his trustee. Even though it were true that there still existed in Rollin B. Fisher, as trustee for his wife, some bare legal right unconveyed to his trustee in bankruptcy, yet this bare legal right, this dry trust. the existence of which I gravely doubt, would not prevent the court from dealing with the deposit, which is to be disposed of according to the beneficial interest therein of the several parties. It appears that Chapin has an interest in the same, by way of pledge or mortgage, to the amount of $1,000. Lund is vested with the beneficial interest of

Rollin B. Fisher, if such interest there was, but he admits that there was none. It follows, therefore, that there must be a decree directing the payment to Chapin of the amount above stated, and directing the payment of the balance to the original petitioner, Cushman. Furthermore, to dispose of the complicated record, there must be a formal decree against Ida C. Fisher. This will follow, in substance, the second paragraph of the decree of the referee of March 2, 1899, so far as the same refers to Ida C. Fisher. This is to be done, although the license has been sold, in order that Ida C. Fisher may present to the court of appeal the question of her right in the license. The first, third, fourth, fifth, sixth, seventh, and eighth paragraphs of the referee's decree have been rendered needless by subsequent proceedings, and, to avoid incumbering the record, they are formally reversed. In the view I take, action by Rollin B. Fisher is not necessary to enable the court to dispose of the fund, and therefore no order or decree will be made against him upon the petition filed by Cushman. Further orders are to be made, admitting Lund and Chapin, upon their several petitions, as parties defendant to the original proceedings. As Lund has submitted to the jurisdiction, it is unnecessary to consider if he could have been made a party defendant to it without his consent. In the matter of Rollin B. Fisher, there must be a decree against him, upon the petition of Lund, similar to that to be made against Ida C. Fisher, above referred to.