In re HURLBUTT, HATCH & CO.

(Circuit Court of Appeals, Second Circuit. January 9, 1905.)

1. BANKRUPTCY—PARTNERSHIP—STOCK EXCHANGE SEAT—OWNERSHIP.
   Where the articles of a commission partnership provided that there should be contributed to the capital stock and for the carrying on of the firm by H. the seat in the New York Stock Exchange owned by him, free and clear of all incumbrances whatever, which, for the purpose of the agreement, was estimated at an agreed valuation of $50,000, and the firm agreed to pay H. interest at 6 per cent. "on the capital so invested" by him, and thereafter paid all dues and assessments chargeable against the seat, which were charged on the firm's books as firm expense, the seat was a part of the assets of the firm in bankruptcy, and not the individual property of H.
   [Ed. Note.—Seat in stock exchange as an asset in bankruptcy, see note to Fisher v. Cushman, 43 C. C. A. 389.]

2. SAME—TRANSFER.
   Bankr. Act July 1, 1898, c. 541, § 70, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3451], provides that the bankrupt's trustee shall be vested with the "title of the bankrupt as of the date he was adjudged a bankrupt, except in so far as it is property which is exempt to all; * * * (3) powers which he might have exercised for his own benefit; * * * and (5) property which, prior to the filing of the petition, he could by any means have transferred, or which might have been levied upon and sold under judicial process." Held that, since a seat in the New York Stock Exchange was subject to transfer by the owner, and could be sold by him subject to transfer restrictions, title to such seat held by a firm passed to its trustee in bankruptcy.

3. SAME—TRANSFER—EXECUTION—ENFORCEMENT—JURISDICTION.
   Bankr. Act July 1, 1898, c. 541, § 2 (7) 30 Stat. 545 [U. S. Comp. St. 1901, p. 3421], empowers courts of bankruptcy to cause the estates of bankrupts to be collected, reduced to money, and distributed, and to determine controversies in relation thereto, except as otherwise provided. Section 2 (15) authorizes such courts to make orders, issue process, and enter such judgments, in addition to those specifically provided for, as may be necessary for the enforcement of the provisions of the act; and section 7 (4), 30 Stat. 548 [U. S. Comp. St. 1901, p. 3425], declares that the bankrupt shall execute and deliver such papers as shall be ordered by the court. Held that, where a member of the New York Stock Exchange contributed his membership to a firm which thereafter became bankrupt, the court of bankruptcy had jurisdiction to compel him to execute a transfer thereof for the benefit of the firm's trustee in bankruptcy.

4. SAME—RESIGNATION.
   The bankrupt having lost his membership when the title to his seat vested in the trustee, it was no objection to the transfer that it was equivalent to resignation of the holder's personal membership in the exchange.

Petition for Revision of Proceedings of the District Court of the United States for the Southern District of New York.

John C. F. Gardiner, for petitioner.

Benj. N. Cardozo, for respondent.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

TOWNSEND, Circuit Judge. The petitioner was a member of the firm of Hurlbutt, Hatch & Co., bankrupts. Henry B. Ketcham, trustee in bankruptcy of said firm, claimed that a seat in the New York Stock Exchange, standing in the name of said Hatch, was copartnership property, worth $68,000, which passed to the trustee and could be sold by him, yet that, owing to the custom and rules of the stock exchange, it could not be advantageously sold so as to be available for the satisfaction of the claims of the firm's creditors, unless its sale should be requested by Hatch, but that, if he would execute and deliver to the stock exchange a paper directing it to sell his seat and to pay the proceeds to the trustee in bankruptcy, the exchange would obey his direction. It appeared that Hatch had refused to apply the said seat to the payment of the partnership debts, or to transfer it to the trustee, or to consent to its sale. The debts of the copartnership amount to about $175,000; its assets, exclusive of said seat, are about $34,000.

The trustee applied to the District Court for an order that Hatch be required to sign and deliver to the stock exchange such request and direction as would authorize an advantageous sale and make the proceeds thereof available for the payment of partnership debts.

Thereupon the court made the following order, namely:

"Ordered, that the said Edward Sanford Hatch forthwith sign and deliver to the said trustee in bankruptcy an instrument in the following form:

"'To the Chairman of the Committee on Admissions of the New York Stock Exchange—Sir: I hereby request you to sell all my right, title and interest in and to my membership in the New York Stock Exchange, subject to the approval of the Committee on Admissions and the constitution of said Exchange; and I hereby authorize and direct you to pay over the proceeds realized from such sale to Henry B. Ketcham, as Trustee in Bankruptcy of the firm of Hurlbutt, Hatch & Company, after deducting therefrom any moneys due to creditors who are members of the Exchange, or firms registered thereon, upon claims arising from contracts subject to the rules of the Exchange, and after deducting any and all other charges or payments required by the constitution and by-laws of the Exchange to be deducted upon a transfer of membership therein;' and it is further

"Ordered, that the said Edward Sanford Hatch be and he hereby is directed, upon demand by the said trustee, to execute any and all other papers that may be required by the said New York Stock Exchange, or that may be necessary or proper for the purpose of signifying his consent to the transfer of the said seat to the person buying the same, pursuant to the direction aforesaid, and any and all other papers that may be necessary or proper for the purpose of vesting in such purchaser the full title to such seat, and of securing to the said trustee in bankruptcy the payment of the purchase price thereof; and it is further

"Ordered, that the said Edward Sanford Hatch be and he hereby is enjoined and restrained from the commission of any act intended to defeat or nullify his consent to the sale aforesaid, and from inducing the officers of the said Exchange to refuse to carry out the said directions, and from otherwise hindering or impeding the sale of his right of membership aforesaid and the transfer of the proceeds thereof to the said petitioner."

This petition seeks to review said order on the following grounds: (1) That the membership in the stock exchange was not the property of said firm, but was the individual property of the petitioner. (2) That it was a personal privilege of said Hatch, and not property which he could have transferred to the trustee. (3) That, in so far as it was property and transferable within the meaning of the bankrupt law, it had become the property of the trustee by the adjudication. (4) That the court had no authority or jurisdiction to compel the petitioner to execute such request, which was equivalent to a resignation of personal membership in said exchange. (5) That it was against public policy to thus exclude the petitioner from said means of livelihood.

That said membership was firm property was shown by the provision in the articles of partnership that there should be "contributed to the capital stock of said partnership for the uses and purposes thereof and for carrying on the same, * * * by the said party hereto of the third part (Edward S. Hatch), the said seat upon the New York Stock Exchange, now owned by him, free and clear of all encumbrance whatsoever, which seat, for the purpose of this agreement, is estimated at an agreed valuation of Fifty thousand dollars ($50,000)"; from the further provision for the payment of interest at 6 per cent. to Hatch "upon the capital so invested" by him, and estimated at $50,000; by the provisions for division of losses and profits; and by the subsequent course of dealing between the partners, whereby the partnership paid all the dues and assessments chargeable against said seat, and said payments were charged in the firm's books as a firm expense.

The fifth ground for review, founded on public policy, need not be discussed.

The second, third, and fourth grounds may be considered together. That property in a stock exchange seat vests in a trustee in bankruptcy is expressly decided in Page v. Edmunds, 187 U. S. 596, 23 Sup. Ct. 200, 47 L. Ed. 318. The facts in said case are strikingly like those herein. There the bankrupt was a member of the Philadelphia Stock Exchange. There, as in this case, when a seat in said exchange is transferred, the transfer is subject to the approval of a committee of the exchange, and in the event of the death of a member a sum would be paid to his family out of the gratuity fund; but if the seat is sold, such sum would go with the seat. The articles of the constitution provided for a committee on admissions, which should inquire into the standing of the applicant for membership and report to the governing committee, which determines by ballot whether a candidate should be elected, five adverse ballots preventing his election. Thus, the conditions in the two cases present the same legal questions. The Supreme Court said as follows:

"Section 70 of the bankrupt act of 1898 (Act July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3451]) provides that the trustee shall be vested with:

" 'The title of the bankrupt, as of the date he was adjudged a bankrupt, except in so far as it is property which is exempt, to all; * * *

" '(3) Powers which he might have exercised for his own benefit. * * *

" '(5) Property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process.' * * *

"We think it could have been transferred within the meaning of the statute. The appellant could have sold his membership, the purchaser taking it subject to election by the exchange, and some other conditions. It had decided value. * * *

"A thing having such vendible value must be regarded as property, and, as it could have been transferred by some means by appellant (one of the conditions expressed in section 70), it passed to and vested in his trustee."

Hyde v. Woods, 94 U. S. 523, 525, 24 L. Ed. 264.

The decisions of the court of last resort of the state of New York are to the same effect. People ex rel. Lemmon v. Feitner, 167 N. Y. 1, 60 N. E. 265, 82 Am. St. Rep. 698; Matter of Hellman, 174 N. Y. 254, 257, 66 N. E. 809, 95 Am. St. Rep. 609, 63 L. R. A. 92.

The contention of the bankrupt "that said membership is a personal privilege" is answered by the opinion of the Supreme Court in Sparhawk v. Yerkes, 142 U. S. 1, 12 Sup. Ct. 104, 35 L. Ed. 915, where the court says:

"While the property is peculiar, and in its nature a personal privilege, yet such value as it may possess, notwithstanding the restrictions to which it is subject, is susceptible of being realized by creditors. Ager v. Murray. 105 U. S. 126 [26 L. Ed. 942]; Stephens v. Cady, 14 How. 528 [14 L. Ed. 528]: Powell v. Waldron, 89 N. Y. 328 [42 Am. Rep. 301]; Belton v. Hatch, 109 N. Y. 593 [17 N. E. 225, 4 Am. St. Rep. 495]; Habenicht v. Lissak, 78 Cal. 351 [20 Pac. 874, 5 L. R. A. 713, 12 Am. St. Rep. 63]; Weaver v. Fisher, 110 Ill. 146."

That the court had jurisdiction to compel the bankrupt to execute the papers necessary to effectuate the sale of said seat is equally clear.

It appears from the allegations of the trustee's petition that he could not compel the stock exchange to admit to membership the person to whom he might sell said seat. The decisions of the United States Supreme Court and of the Court of Appeals of the state of New York show that the stock exchange is not bound to admit a purchaser to membership, and that such purchaser takes the seat subject to the conditions imposed by the constitution and rules of the exchange. Hyde v. Woods, supra; Page v. Edmunds, supra; People ex rel. Lemmon v. Feitner, supra.

The general power of courts of equity to compel a transfer and sale of such personal privileges as patents and trade-marks is asserted in Ager v. Murray, 105 U. S. 126, 131, 26 L. Ed. 942. The power of the court to require a bankrupt to execute the instruments necessary to effectuate the sale of a personal and exclusive right has been exercised in the cases of the transfer of liquor licenses (In re Fisher [D. C.] 98 Fed. 89; In re Becker [D. C.] 98 Fed. 407), of a license of a stall in a market (In re Emrich, 101 Fed. 231), and of a seat in the New York Stock Exchange, under the bankruptcy act of 1867 (In re Ketchum [D. C.] 1 Fed. 840).

If there were any doubt as to the general power of the District Court to make such order, it would be resolved by the provisions of the bankruptcy act empowering courts of bankruptcy to "cause the estates of bankrupts to be collected, reduced to money and distributed, and determine controversies in relation thereto, except as herein otherwise provided" [section 2 (7)] ; "make such orders, issue such process, and enter such judgments in addition to those specifically provided for as

may be necessary for the enforcement of the provisions of this act" [section 2 (15)]; and by the further provision that "the bankrupt shall * * * execute and deliver such papers as shall be ordered by the court" [section 7 (4)]. Act July 1, 1898, c. 541, 30 Stat. 545, 546 [U. S. Comp. St. 1901, p. 3421].

There is no merit in the contention that the order to execute said request was equivalent to a resignation of said personal membership in the stock exchange. The bankrupt lost his membership when the essential element thereof—the seat in the stock exchange—vested in the trustee. He was "fully and completely divested of his property in the seat or membership." Platt v. Jones, 96 N. Y. 24. The order of the court merely effectuates the provision empowering it to cause the estates of bankrupts to be collected, by requiring this bankrupt to obey the provision for the execution of the papers necessary for such purpose.

The order is affirmed, with costs.