## WATSON BROS. TRANSP. CO., Inc., v. JAFFA et al.

### No. 12816.

Circuit Court of Appeals, Eighth Circuit.

June 15, 1944.

Harold M. Kelley, of Omaha, Neb. (Robert J. Webb and Sam Beber, both of Omaha, Neb., on the brief), for appellant.

Stanley B. Houck, of Minneapolis, Minn. (Shull & Marshall, of Sioux City, Ia., on the brief), for appellees.

Before STONE, WOODROUGH, and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

This appeal is from an order of the District Court dismissing a petition in which plaintiff prayed, i. a., that defendant be required to execute certain documents in specific performance of an agreement involving the lease of, and option to purchase, operating rights over certain interstate trucking routes. The order of dismissal was upon the pleadings from which the court found that the plaintiff in the action was "not entitled to the relief prayed in its complaint," and the plaintiff has appealed.

It appears from the pleadings that the defendant, Harry Jaffa, of Minneapolis, Minnesota, entered into the following "Agreement" in writing with the plaintiff, Watson Bros. Transportation Co., Inc., a Nebraska transportation corporation, on July 30, 1942:

"Whereas, the Lessor is the owner of a certain franchise acquired from the Mid-American Truck Lines, Inc., and more particularly described as Certificate No. MC 52822, Sub 5, issued December 12, 1941, covering operating rights between Minneapolis, Minnesota, and Kansas City, Missouri, by way of Sioux City, Iowa, and Omaha, Nebraska.

"Now, Therefore, It Is Agreed By And Between The Parties Hereto:

"1. That the Lessor shall and hereby does lease to the Lessee all rights and

privileges under said franchise insofar as the same pertains to operations between Sioux City, Iowa, and Kansas City, Missouri, subject to the terms hereinafter set forth, and it is further agreed that the Lessor by this agreement shall and hereby does give to the Lessee certain options to purchase rights and privileges under said franchise as hereinafter described.

"2. In consideration of the agreement of the Lessor, the Lessee hereby agrees to pay to the Lessor the sum of $50.00 per month as rental for the use of the rights and privileges of the franchise above mentioned insofar as they pertain to that portion of said franchise covering the route from Sioux City, Iowa, to Kansas City, Missouri, such payments to be due the 1st day of each month from and after the time this agreement takes effect.

"3. In further consideration of the agreements of the Lessor, the Lessee agrees to pay to the Lessor a sum equal to one-half of any moneys paid by the Lessor to the Trustee in Bankruptcy of the Mid-American Truck Lines, Inc., in the purchase of the assets of the Mid-American Truck Lines, Inc., by the Lessor, Provided, However, in the event the Lessor is required to pay to the Trustee more than $1500.00 for such assets, the Lessee shall be liable to the Lessor under this agreement in the sum of $750.00 and no more. The Lessor agrees to pay to the Lessee one-half of any sum realized from the sale of such assets.

"4. It is further agreed that the Lessee shall have an option to buy from the Lessor that portion of the franchise covering the route from Sioux City, Iowa to Kansas City, Missouri, at any time during the life of this agreement for the sum of $7,000.00 less any sum which may have been paid to the Lessor either as rental or under the provisions of this agreement concerning the purchase of the assets from the Trustee in Bankruptcy of the Mid-American Truck Lines, Inc. In the event of the exercise of this option to purchase by the Lessee, the purchase price shall be computed without interest either on the purchase price itself or on the payments theretofore made under this agreement.

"5. It is further agreed that in the event the Lessee exercises its option to buy that portion of the franchise rights above described, it shall have the further option of purchasing all rights and privileges under said franchise covering the route from Minneapolis, Minnesota, to Sioux City, Iowa, for the sum of $5,000.00 either at the time of the purchase of that portion of the franchise covering the route from Sioux City, Iowa, to Kansas City, Missouri, or at any time subsequent to such purchase.

"6. This agreement is subject to approval by the Interstate Commerce Commission and shall become effective at the time such approval is obtained. In the event such approval be not obtained, the agreement shall be null and void. It is agreed that the Lessee shall bear the costs and expenses of such proceedings as may be necessary to obtain the approval of the Interstate Commerce Commission.

"7. It is further agreed that the lease and options herein granted shall run for a term of two and one half years from the date of approval by the Interstate Commerce Commission or for the duration of the war and six months thereafter and the Lessee is hereby granted the privilege of determining which of the said terms shall apply hereto. The duration of the war herein referred to shall be fixed as the time of the signing of a treaty of peace between the United States of America on one part and Germany, Italy and Japan on the other part.

"In case option is exercised payment will be made in full at the time and by cash."

The plaintiff alleged:

"The parties to this action, being the parties to said agreement, knew that the Interstate Commerce Commission might request that the application submitted to the Commission should be made in such form and contain such provisions as the members of the Commission desired, and plaintiff and defendant agreed when said agreement was made that anything necessary to obtain the approval of the application by the Commission would be done, and this plaintiff relied upon this promise and representation of the defendant, made at the time said agreement was entered into."

On August 25, 1942, plaintiff and defendant entered into a temporary 180-day lease of the routes covered by the "agreement" which was approved by the Commission, and plaintiff instituted operations thereunder. The parties also joined in making application to the Commission for approval of the "agreement" of July 30, 1942, and after a hearing had been had the Commission made its report, dated March 13, 1943, in Mo. MC–F–1962, as follows:

"Watson Bros. Transportation Co., Inc., of Omaha, Nebr., and Harry Jaffa, doing business as Jaffa Transportation and Jaffa Transit, of Minneapolis, Minn., by joint application filed September 2, 1942, seek authority under section 5, Interstate Commerce Act, for lease by the former of certain operating rights of the latter, at a rental of $50 per month. The application is unopposed.

"Pursuant to temporary authority granted under section 210a(b), lessee leased the considered rights for a period expiring March 28, 1943, at a rental of $50 per month.

"Lessee, a Nebraska corporation, operates in interstate or foreign commerce as a motor-vehicle common carrier of general commodities over regular routes generally converging at Omaha, and reaching Naper, Nebr., and Sioux City, Iowa, on the north, Chicago, Ill., on the east, Topeka, Kansas, and Kansas City, Mo., on the south, and Denver, Colo., on the west, serving most intermediate points; and of certain specified commodities, over irregular routes, within the same general territory, Lessee uses in excess of 20 motor vehicles in its operation.

"Lessor's operations over irregular routes as a motor-vehicle common carrier of property from and to Chicago, Ill., and certain points in Iowa, Minnesota, North Dakota, and Wisconsin are described in Reynolds and Nold—Purchase—Jaffa, 38 M.C.C. 439. Subsequent to submission of that case, lessor acquired[1] rights to transport general commodities over regular routes extending from Minneapolis to Kansas City, Mo., the most westerly route being via Sioux City, Iowa, Omaha, Nebr., and Kansas City, Kans., and the most easterly being via Storm Lake and Tenville Junction, Iowa, and St. Joseph, Mo. These routes are connected by a number of other shorter routes. Except over routes between Storm Lake and Tenville Junction, and Storm Lake and Missouri Valley, Iowa, service is authorized to all intermediate points.

"It is proposed that lessee lease from lessor at a rental of $50 per month all of the latter's rights to operate over regular routes lying between Sioux City and Storm Lake on the north, and Kansas City, Mo.-Kans., on the south.[2] In addition to the monthly rental, lessee would pay lessor a sum equal to one-half of any monies paid by the latter to the trustee in bankruptcy of Mid-American Truck Lines, Inc., in connection with the purchase of its assets, but not more than $750; and lessor would repay to lessee one-half of any sum realized from the sale of such assets. Lessee is given an option during the term of the lease to purchase the considered rights for $7,000, less amounts paid as mentioned above.

"The proposed lease agreement provides that it shall become effective upon our approval of the transaction and remain in effect for two and one-half years from such date, or for the duration of the war and six months thereafter at the option of lessee; and that, for the purpose of such provision, the duration of the war shall be fixed as of the date of the signing of a treaty of peace between the United States, on the one hand, and Germany, Italy, and Japan, on the other. In view of the indefinite nature of the latter alternative, we shall approve lease of the considered operating rights for a term not exceeding two and one-half years.

"The lease agreement submitted with the application, dated July 30, 1942, is ambiguous with respect to the operating rights intended to be covered, and it was necessary to resort to collateral statements to determine the scope of the agreement. Therefore, our findings will be conditioned upon submission of a new lease agreement which shall describe the rights with particularity and embrace the terms and conditions herein approved.

\*  \*  '  \*  \*  \*

"We find that lease by Watson Bros. Transportation Co., Inc., of the previously-described portion of the operating rights of Harry Jaffa, doing business as Jaffa Transportation and Jaffa Transit, for a term not exceeding $2\frac{1}{2}$ years, upon the modified terms and conditions above set forth, which terms and conditions as modified are found

---

[1] Application for transfer to lessor of operating rights covered by certificates issued to Mid-American Truck Lines, Inc., in Nos. MC–52822 and MC–52822 (Sub-Nos. 1, 3, 4 and 5) was approved by the Commission June 2, 1942, and, for record purposes, Docket Nos. MC– 62445 (Sub-Nos. 6, 7, 8, 9, and 10) were assigned to the rights acquired.

[2] This would include all operating rights covered by Nos. MC–62445 (Sub-No. 8) and MC–62445 (Sub-No. 10) and a portion of the rights covered by No. MC–62445 (Sub-No. 6).

to be just and reasonable, is a transaction within the scope of section 5(2) (a), and will be consistent with the public interest; provided, however, that prior to exercise of the authority herein granted the parties shall submit one verified and two conformed copies of a new lease agreement, describing the operating rights involved with particularity and embracing the terms and conditions herein approved. .

"An appropriate order will be entered."

Coincident with said report, the Commission entered its order in the same numbered proceeding as follows:

"Order.

"No. MC–F–1962. Watson Bros. Transportation Co., Inc.—Lease—Harry Jaffa.

"Investigation of the matters and things involved in this proceeding having been made, and said division, on the date hereof, having made and filed a report containing its findings of fact and conclusions thereon, which report is made a part hereof:

"It is ordered, That lease by Watson Bros., Transportation Co., Inc., of Omaha, Nebr., of certain operating rights of Harry Jaffa, doing business as Jaffa Transportation and Jaffa Transit, of Minneapolis, Minn., be and it is hereby, approved and authorized, subject to the terms and conditions set out in the findings in said report.

"It is further ordered, That, if the parties to the transaction herein authorized desire to consummate same, they shall (1) notify this Commission in writing of the intended consummation date, (2) promptly take such steps as will insure compliance with sections 215 and 217 of the Interstate Commerce Act, and with rules, regulations, and requirements prescribed thereunder, and (3) confirm in writing to the Commission, immediately after consummation, the date on which consummation has actually taken place.

"It is further ordered, That, unless the authority herein granted is exercised within six months from the date hereof, this order shall be of no further force and effect.

"It is further ordered, That recital in said report of balance-sheet and other financial data shall not be construed as approving accounting methods which have been followed or expenditures represented thereby.

"And it is further ordered, That nothing herein contained shall be construed as a determination of the operating rights of any person or persons under any section of the act, except section 5 thereof, as expressly determined herein.

"By the Commission, division 4."

Following the report and order of the Commission, the plaintiff Watson Bros. Transportation Co., Inc., declared in a petition to the Interstate Commerce Commission, dated April 16, 1943, a copy of which was served on Jaffa:

"That under the provisions of the said lease [of July 30, 1942] the choice of the terms provided therein is at the option of the Lessee. Your petitioner is satisfied to take the two and one-half year term as required by the order of the Commission, and hereby exercises its option so to do."

The plaintiff also requested the defendant Jaffa to cooperate with it to supply the "one verified and two conformed copies of a new lease agreement, describing the operating rights involved with particularity and embracing the terms and conditions" approved by the Commission. But the defendant, instead of cooperating with the plaintiff, has disclaimed obligation under the contract and has entered into another agreement to sell the same routes to Holdcroft Transportation Company.[3] He also gave a temporary 180-day lease of the routes to Holdcroft which was approved by the Interstate Commerce Commission August 4, 1943, and has joined with Holdcroft in application to the Commission to approve his sale of the routes to Holdcroft, which application remains pending.

---

[3] It was alleged in the petition:

"The defendant, after making said agreement and after joining in the application to the Interstate Commerce Commission for approval of the transaction as hereinbefore alleged, thereafter for his own purposes and with the intention of defrauding this plaintiff, entered into another agreement to sell the said trucking lines to one Holdcroft, and when defendant was requested by this plaintiff to cooperate in complying with the request of the Interstate Commerce Commission in its said order of March 13, 1943, above mentioned, the defendant refused so to do and still refuses and will continue so to do unless required by order of this court to comply and carry out his said agreement."

Mr. Jaffa pleaded in his answer to plaintiff's petition that his "Agreement" of July 30, 1942, had become null and void for want of approval thereof by the Commission and he denied the alleged agreement to cooperate to obtain Commission approval. Holdcroft company appeared and filed its answer of intervener in which it adopted the defenses asserted by defendant Jaffa.

It was alleged in the petition that plaintiff "will suffer irreparable damage if the defendant sells said trucking routes to the said Holdcroft and plaintiff has no adequate remedy at law to obtain the relief herein sought. Plaintiff shows the court that there are no other trucking routes available at any price in the territory covered by the defendant's routes, which were the subject matter of the said agreement between plaintiff and defendant, and that said trucking routes have a peculiar value and are not obtainable in any market."

The prayer of plaintiff's petition was that the court "order the defendant to specifically perform the agreement between the parties hereto, set out in the foregoing complaint, so as to comply with the order of the Interstate Commerce Commission, and to do any and all things necessary to complete performance of said agreement.

"Plaintiff further prays that the defendant be restrained and enjoined by orders of this court from selling or otherwise disposing of the trucking routes which he agreed to sell to this plaintiff, and from taking or pursuing any procedure for that purpose, until a determination of the rights of the parties to this action relative to the same may be made.

"Plaintiff further prays that it have such other relief as may be just and equitable, and be awarded its costs in this action."

It was, and now is, the position of defendant Jaffa and the intervener Holdcroft, that (1) plaintiff Watson Bros., Inc., has a plain, speedy and adequate remedy for its alleged wrongs by proceeding before the Interstate Commerce Commission in the manner provided by 28 U.S.C.A. 41 (28), 43, 44, 45, 46, and 47, either in the proceeding in which plaintiff invoked the Commission's jurisdiction upon plaintiff's own application for approval of the agreement of July 30, 1942, or in the proceeding before the Commission in which Holdcroft and Jaffa have applied to the Commission for approval of the sale of the routes to Holdcroft in which it is open to plaintiff to intervene, and (2) that the plaintiff's complaint fails to state a claim upon which relief can be granted, in that the agreement of July 30, 1942, never became effective and is null and void because approval thereof by the Commission was not obtained but was refused.

The trial court refused to award the defendants a judgment in summary proceedings but reached the conclusion on consideration of the pleadings and arguments that the plaintiff was not entitled to the relief prayed in its complaint, and therefore dismissed it.

1. The object of plaintiff's action here is to obtain a decree of specific performance compelling the defendant Jaffa to execute the documents required by the Commission's order as the condition upon which Watson Bros., Inc., are authorized to operate the routes. Plaintiff asserts that Jaffa ought in equity and good conscience to execute them and that the court of equity should compel him to do so. There is diversity of citizenship between the parties and the amount involved is more than $3,000, so that the jurisdiction of the District court to entertain the action is manifest, unless, as contended for defendants, the matter is for the Interstate Commerce Commission to determine in the first instance.

Very broad and comprehensive powers are conferred upon the Interstate Commerce Commission in all matters of interstate transportation, and in the exercise of its power to grant or to deny its approval to applicants for authority to operate particular interstate trucking routes[4] it undoubtedly may hear and determine disputes between rival claimants asserting the right to carry on the same operation. In such disputes the public interest is paramount and it is for the Commission to identify and to protect the public interest in the first instance. As shown by the pleadings in this case the Commission determined after hearing that the transaction between Watson Bros., Inc., and Jaffa would be consistent with the public interest, and the transaction was approved, but the Commission prescribed

---

[4] See Hoover Truck Co.—Purchase—Frank Johnson, 37 M.C.C. 507, 510; Wilson Storage & Tfr. Co.—Purchase— Dakota Trans., 36 M.C.C. 221, 226; United States v. Resler, 313 U.S. 57, 59, 61 S.Ct. 820, 85 L.Ed. 1185.

conditions upon which Watson Bros., Inc., were authorized to operate. It preserved the public interest by permitting temporary operation of the routes in question by Watson Bros., Inc., and thereafter by permitting temporary operation thereof by Holdcroft.

But the Commission remains an administrative board exercising administrative power, and is not a court, and has no judicial power, although it has and exercises a quasi judicial power. 15 C.J.S., Commerce, § 141, p. 501. In the first volume of its reports, the Commission declared "The power to enforce contracts is not one which has been confided to us", Traders, etc., v. Philadelphia, etc., Co., 1 I.C.C. 122, at page 131, and although the wide extension and multiplication of its duties have required it to perform many functions in the protection of the public interest in transportation which were not then foreseen, still its further expression in the same case retains its force, viz., "If petitioner has contracts * * * and if in any of the matters related in this evidence it has been injured and wronged by the defendants, there are courts provided by law having jurisdiction to hear and determine controversies of that character." We need not decide that the Commission could never in any form of proceeding before it, be required to determine the dispute between the parties here concerning the duty of Jaffa towards Watson Bros., Inc., nor need we inquire particularly into the means of compulsion or want of them on the part of the Commission.

It is very clear that in its order of March 13, 1943, the Commission made no attempt to coerce either party to the proceeding and nothing in the record implies that the Commission will, or that it can, settle the controversy between the parties presented by the pleadings here. Certainly a mandamus would not lie to compel the Commission to do so. United States ex rel. v. I. C. C., 294 U.S. 50, 55 S.Ct. 326, 79 L.Ed. 752.

On the other hand, a suit in equity to compel specific performance of a contract is in its nature a purely judicial action and the court which otherwise has jurisdiction may not refuse to take cognizance of it because of a mere possibility that the questions involved might be brought before an administrative tribunal. If the pleadings presented a case in equity, the court should not have dismissed it without trial of the merits.

2. It is contended for Jaffa and Holdcroft that it was beyond the power of the District court to grant any effective relief to Watson Bros., Inc., in this action because even if Jaffa were compelled by the court's decree to execute the documents required by the order of the Commission, such documents would not of themselves vest the right to operate Jaffa's trucking routes in Watson Bros. Inc., and it is pointed out that all such transfers of operating rights over interstate trucking routes are without validity except as they are approved by the Commission. 49 U.S.C.A. § 5(2).

But a man's obligation under his lawful contract is not a whit less binding upon him because of the fact that an approval of the transaction must be had before the party to whom he has obligated himself can receive full benefits. The power vested in the Commission in respect to transfers of interstate trucking routes does not relegate the owners of such routes to the status of non compos persons. Such owners remain fully responsible in morals, law and equity on such undertakings as they enter into in respect to their routes. The fact that Jaffa's agreement with Watson Bros., Inc., could not of itself enable Watson Bros., Inc., to operate the routes did not justify refusal of the court to try the charge that Jaffa had become bound to fulfill the obligation undertaken by him. The mere fact that a contract or transfer is subject to the approval of a public agency is not a bar to a decree compelling a party to execute the documents necessary for the consummation of the contract or transfer. This principle is well established in the cases involving agreements to transfer liquor licenses, which, like the transfer in question here, must be validated by the licensing authority, In re Fisher, D.C.Mass., 98 F. 89; Fisher v. Cushman, 103 F. 860, 51 L.R.A. 292; In re McArdle, D.C.Mass., 126 F. 442; In re Becker, D.C.Pa., 98 F. 407; In re Wiesel, D.C.Pa., 173 F. 718; In re John F. Doyle & Son, 3 Cir., 209 F. 1; in cases involving the sale of a stock exchange seat where the transfer is subject to the approval of a committee of the exchange, In re Hurlbutt, Hatch & Co., 2 Cir., 135 F. 504, 507; Board of Trade v. Johnson, 264 U.S. 1, 44 S.Ct. 232, 68 L.Ed. 533; in cases involving the transfer of a license to a market stall, where a request to the city authorities is required for reissue of the license, In re Emrich, D.C.Pa., 101 F. 231; and where sale of a common carrier fran-

chise is subject to the approval of the state and federal commissions, Lennon v. Habit, 216 N.C. 141, 4 S.E.2d 339. Compare Poole v. Middleton, 29 Beav. 646, where a shareholder, who held shares under a deed of settlement providing that their sale was subject to the approval of the board of directors, was compelled to transfer them although the directors refused to approve the transaction.

As pointed out in Board of Trade v. Johnson, supra [264 U.S. 1, 44 S.Ct. 235, 68 L.Ed. 533]: "By operation of the Bankrupt Law the membership [in the exchange] passes, subject to rules of the exchange, to the trustee for his disposition of it. The trustee does not become a member, but he does come into control of the bankrupt's right to dispose of the membership, and with the aid of the bankruptcy court can require the bankrupt to do everything on his part necessary under the rules of the board to exercise this right." Similarly, in the instant case, a court of equity can require that Jaffa perform that which is necessary for plaintiff to enjoy and exercise the rights acquired by him under his contract. The plaintiff is entitled, at least, to this much aid from this court. There is no reason for the court to aid a party who refuses to carry out those acts necessary to effectuate the intention and contract of the parties by speculating as to the willingness or unwillingness of the Commission to grant approval. Cf. Lennon v. Habit, supra. And where, as in this case, the Commission has indicated by its description of the lease as "just and reasonable" and "consistent with the public interest," no reason to deny specific performance is presented. There will be no effort in an appropriate decree to compel the transfer of a lease disapproved by the Interstate Commerce Commission. See Axelrod v. Osage Oil & Refining Co., 8 Cir., 29 F.2d 712, 730.

There is the further question whether a proper case for equitable relief by way of specific performance was made out on the pleadings. It is not a function of courts to make contracts for parties where there has been no meeting of minds between them, and specific performance of contracts that are indefinite, uncertain or ambiguous may not be decreed. Toomey v. Toomey, 7 Cir., 98 F.2d 736, 739; Wichita Water Co. v. City of Wichita, 8 Cir., 280 F. 770, 771; United States Colloid Mill Corp. v. Myers, D.C.N.Y., 6 F.Supp.

283, 289. The Commission said in its report of March 13, 1943, that the lease agreement of July 30, 1942, "is ambiguous with respect to the operating rights intended to be covered and it was necessary to resort to collateral statements to determine the scope of the agreement," and the expression has been seized upon by defendants as a bar to a decree for specific performance. But the point is not well taken. It clearly appears that there was no ambiguity in the agreement in the sense that the minds of the parties had not met upon every material element of the contract. The extent, nature, identity and scope of the operating rights covered by the agreement of the parties were fully and mutually understood. Watson Bros., Inc., had been in possession of and operating the trucking routes in question under the 180-day temporary lease sanctioned by the Commission and the pleadings suggest no difficulties, differences or questions arising with respect to the specific trucking rights leased, or that any misunderstanding in that matter existed between the parties to the agreement. The Commission also had determined the scope of the agreement in all of these respects by reference to the "collateral statements" to which the agreement was related and "approved and authorized [it] subject to the terms and conditions set out in the findings in said report." Its use of the word "ambiguous" with respect to the operating rights under the agreement was not intended as a finding that the minds of the parties had failed to come together, but the insistence of the Commission was that the necessity of looking to the related matter for particulars of description should be obviated by formal incorporation of the description in the lease in a manner according with the practice of the Commission. Its objection was not addressed to the substance of the agreement but solely to the failure to comply with a formality necessary for approval of the operations by Watson Bros., Inc. No material part of the contract remained to be settled by further negotiation; there was clear mutual understanding of the terms of the contract, and positive assent thereto. An order of the court requiring Jaffa to execute documents cast in a form to meet the requirements of the Commission's order will not therefore require a new or different contract for the parties.

Appellees, however, also contend that there was no enforceable agree-

ment between the parties by which appellee agreed to do anything necessary to obtain approval of the application by the Commission. Aside from the allegation of the petition' that Jaffa did make such an agreement, it is to be noted that although the written agreement contains no express provision that Jaffa will cooperate with Watson Bros., Inc., to meet the formal requirements for approval of an application for permission to operate trucking routes under a lease, it is well settled that a contract includes not only the terms set forth in express words, but in addition all implied provisions indispensable to effectuate the intention of the parties and carry out the contract, and in the absence of which the contract could not be effectively performed. Sacramento Nav. Co. v. Salz, 273 U.S. 326, 329, 47 S.Ct. 368, 71 L.Ed. 663; New York Casualty Co. v. Sinclair Refining Co., 10 Cir., 108 F.2d 65, 69; Montrose Contracting Co. v. Westchester County, 2 Cir., 94 F.2d 580, 582; American Central Insurance Co. v. McHose, 3 Cir., 66 F.2d 749, 751; Baldwin Rubber Co. v. Paine & Williams Co., 6 Cir., 107 F.2d 350, 353; Williston on Contracts, Sec. 1293 et seq.; see Cornell Law Quarterly 615; 23 Minn. Law Rev. 189. In determining whether the principle is applicable, the nature of the contract, the circumstances under which it was made, the situation of the parties and the objects they had in view in making the contract should be considered. In the instant case both parties at the time of the agreement were engaged in trucking and transportation operations in interstate commerce and were fully aware and cognizant of the necessity of meeting the formal requirements of the Interstate Commerce Commission with respect to the lease of operating rights in interstate commerce. Both parties knew that any contract for a lease of such rights required the taking of certain steps in presenting an application to the Commission and obtaining approval of a lease under which Watson Bros., Inc., would be permitted to operate and that the Commission required compliance with forms prescribed by it. Both parties realized that cooperation in casting their lease in a prescribed form was indispensable to effectuate the purpose of their lease and that failure to render such assistance as would make possible the Commission's approval with respect to the form of the contemplated lease would render their leasing efforts futile. Watson Bros., Inc., was entitled to the justifiable assumption that the contract included the implied promise of Jaffa to cooperate with its lessee in meeting the formal requirements for approval of the lease by the Commission, and under the circumstances an implied obligation arose on the part of the lessor to sign a lease embodying what had been agreed to in a form sufficient to obtain permission to operate from the Commission. Lennon v. Habit, 216 N.C. 141, 4 S.E.2d 339. See 18 No. Carolina Law Rev. 135.

In Lennon v. Habit, supra, a closely analogous situation was presented. Defendants gave plaintiffs an option to buy at any time within ninety days their franchise as a common carrier, together with certain property, at a stipulated price, subject to the approval of the Interstate Commerce Commission and of the state commissions which had jurisdiction over carriers. Plaintiffs instituted an action for specific performance (and alternative relief), alleging that plaintiffs gave defendants notice of their intention to exercise the option within the time specified and that the parties to the contract filed a joint application for the transfer with the Interstate Commerce Commission. That the application was refused because "under the rules of the Interstate Commerce Commission it is required that when application so made is on behalf of partnerships each partner of the partnership shall execute and acknowledge the execution of the application." That the application was dismissed because "not signed in accordance with the aforesaid rule." That defendants refused to take further steps to secure the approval of the Commissions. A judgment was entered in the trial court sustaining a demurrer to the complaint. On appeal, the judgment was reversed and it was held that the defendants were under a duty to join in a proper form of application to the commissions in furtherance of the contract, and such reasoning and conclusion appear sound.

Appellees have also made the point that in the new documents prayed for the option to purchase granted by Jaffa in the agreement must also be different in form. The agreement granted alternative privileges at the election of Watson Bros., Inc., but Watson Bros., Inc., has merely made its choice between the alternatives, as it had the right to do, and such election effected no alteration in the contract agreed upon. Its substance remains

the same. Nor does the fact that the Commission has deferred its consideration of any exercise of the option to purchase until Watson Bros., Inc., shall decide to proceed in that matter, constitute a refusal to approve the agreement. On the contrary, the Commission has approved the grant of the option as it is contained in the agreement.

It is concluded that the order of dismissal be reversed and the case remanded for trial in accordance herewith.