**DEATON, INC., Plaintiff-Appellant,**

v.

**POPLARVILLE TRUCK LINE, INC.,
Defendant-Appellee.**

No. 27452

**Summary Calendar.**

United States Court of Appeals
Fifth Circuit.

Sept. 9, 1969.

D. H. Markstein, Jr., Markstein & Morris, Birmingham, Ala., Leonard B. Levy, Dufour, Levy, Marx & Lucas, New Orleans, La., for appellant.

Douglas C. Wynn, Greenville, Miss., for appellee.

Before WISDOM, COLEMAN, and SIMPSON, Circuit Judges.

PER CURIAM.

We have concluded on the merits that oral argument is unnecessary in this case. Accordingly, we have directed the Clerk to place the case on the Summary Calendar and to notify the parties of this fact in writing. See Rule 18 of the Rules of this Court and Murphy v. Houma Well Service, 5 Cir. 1969, 409 F.2d 804, Part I.

In 1965 Poplarville Truck Lines, Inc. entered into a contract to sell its motor carrier Certificate of Public Convenience and Necessity issued by the Interstate Commerce Commission, to Deaton, Inc. The present controversy turns upon Paragraph 5 of the contract, which reads as follows:

5. In the event that the I.C.C. attaches any condition, restriction or limitation to its approval of such

transfer, which in Deaton's opinion may render the certificate to be transferred less valuable to Deaton, then Deaton may elect (a) not to consummate this purchase or (b) to assign this contract to some third party. In the event Deaton elects option (b) above, then this agreement shall remain in effect as between Poplarville and such assignee, and a new application shall be filed with the I.C.C. by Poplarville and by such assignee on the same terms and conditions as are set out in this agreement. In the event Deaton elects option (a) above, then there shall be no liability of any kind on either party to the other arising out of this agreement.

The ICC denied the application of the parties to transfer the certificate to Deaton. Deaton then invoked subparagraph (b) of paragraph 5 and assigned its rights under the contract to Miss-Lou Truck Lines, Inc. Poplarville Truck Lines refused to join with Miss-Lou in applying for a transfer. Deaton brought this suit to compel specific performance by Poplarville of paragraph 5(b). The district court granted the defendant's motion to dismiss on the pleadings.

The only issue in the case is whether Deaton's right to assign the contract in the event that the ICC should attach "any condition" to its approval of the transfer could be invoked when the ICC denied the application completely. Jurisdiction rests upon diversity of citizenship.

The contract speaks plainly. Paragraph 5 permits assignment of the certificate only if the ICC has approved Deaton's application conditionally. Denial is not conditional approval. The options in paragraph 5 of the contract do not arise on denial of the application by the ICC, but rather, upon its approval—not a full and unqualified approval, but one to which "conditions, restrictions, or limitations" unacceptable to Deaton were attached. This is the only interpretation which can be given

to paragraph 5 of the contract. This interpretation is clarified by the fact that the language of paragraph 5 embodying the agreement between the parties states that the "condition, restriction, or limitation" would render "the certificate to be transferred less valuable to Deaton". This can mean only that approval of the transfer by the ICC was contemplated by the parties, because obviously no certificate could be transferred if the application were denied.

In Watson Bros. Transport Co. v. Jaffa, 8 Cir. 1944, 143 F.2d 340, the basic instrument creating an option to purchase motor carrier rights, a lease, had already been approved by the Commission. The court said: "There will be no effort in an appropriate decree to compel the transfer of a lease disapproved by the Interstate Commerce Commission. See Axelrod v. Osage Oil & Refining Co., 8 Cir. 1928, 29 F.2d 712, 730." In Allegheny Corp. v. James Foundation of New York, 2 Cir. 1954, 214 F.2d 446, approval by the Interstate Commerce Commission of Allegheny's acquisition of stock in one rail carrier was required to be accomplished in a period of three days. In denying Allegheny's application for specific performance of the contract against the prospective seller, the court said:

For, although Allegheny and the James Foundation could validly contract for the purchase and sale of this controlling interest without previous Interstate Commerce Commission approval, nevertheless, absent such approval the performance of that contract—the "accomplishing" or "effectuating" of the acquisition of stock —would have been illegal, and, under 49 U.S.C. §§ 5(4), 5(7), and 10(1), would have made each of the parties guilty of a crime. No court should encourage violation of the clear statutory policy by enforcing performance of such a contract—whether by awarding specific performance of the acquisition or damages for not per-

forming—when Commission approval could not be had within the time limit. 214 F.2d at 450.

Since the words of the contract are clear on their face, we hold that the district court acted properly in dismissing the cause on the pleadings.

The judgment is affirmed.